Filed 4/25/16  Becker v. Becker CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RUTH BECKER, | B248007 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC109620) |
| v. | |
| JOAN ASLAN BECKER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Affirmed.

Joan Aslan Becker, in pro. per., for Defendant and Appellant.

Shore, McKinley & Conger (Sacramento), Aaron S. McKinney; Shore, McKinley & Conger (Stockton) and John H. McKinley for Plaintiff and Respondent.

_____

Joan E. Aslan Becker, an attorney representing herself in the trial court and in this court, appeals from the judgment entered against her in an action brought by her mother Ruth Becker to quiet title and for partition of a condominium. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Becker Family Purchases a Condominium*

On October 27, 1997 Ruth, individually and as trustee of the Becker-Rogers Trust,[1] and Joan agreed to buy a condominium on Wilshire Boulevard in Westwood for $136,774.60.[2] Ruth paid $106,774.60 of the purchase price, and Joan paid the remaining $30,000. The parties orally agreed that Joan and her daughter Isabella would live in the condominium, and that Joan would pay all property taxes, homeowner association dues, insurance premiums, parking and utility fees, and special assessments associated with the condominium. When Joan failed to make these payments, Ruth made them.

Eventually, on September 16, 2010, Ruth filed this action to quiet title to the condominium and for partition. Ruth also alleged causes of action for intentional infliction of emotional distress, unjust enrichment, and elder abuse, but she apparently abandoned those claims.

B.     *Joan Participates in Some But Not All of the Pretrial Proceedings*

On October 4, 2011 the trial court heard Joan's demurrer, motion to strike, and motion to compel production of documents. Joan attended the hearing, and a court reporter transcribed the proceedings. At the beginning of the hearing the court advised

---

[1]     Ruth Becker and her husband Arthur G. Becker created the Becker-Rogers Trust in 1990. Arthur died before Ruth filed this action.

[2]     Because the parties "share the same last name, we refer to them by their first names for convenience and clarity." (*Jones v. ConocoPhillips Co.* (2011) 198 Cal.App.4th 1187, 1191, fn. 1; see *Donkin v. Donkin* (2015) 58 Cal.4th 412, 415, fn. 1.)

the parties that its tentative ruling was to overrule Joan's demurrer, deny her motion to strike, and grant her motion to compel production of documents. When asked if she wanted to be heard, Joan addressed the discovery motion only. After a colloquy between Joan and the court regarding her discovery motion, there was a pause in the proceedings and the parties and the court had an off-the-record discussion before the hearing concluded without any further transcription by the court reporter. There is no other reference to the demurrer or motion to strike in the transcript of the hearing. The trial court apparently adopted its tentative ruling, because the minute order states the court overruled the demurrer and denied the motion to strike, and ordered Joan to file an "answer ONLY, within thirty days (30) days." The court also set the case for trial on December 28, 2012. Joan filed a verified answer on November 3, 2011.

On January 10, 2012 the trial court heard a discovery motion filed by Ruth. Joan attended the hearing, and a court reporter transcribed the proceedings. The court gave its tentative ruling to deny the motion. After some discussion with the parties, the court decided to schedule a discovery conference on January 31, 2012 in an effort to assist them in resolving their remaining discovery disputes. Both parties waived notice and agreed to attend the hearing on that date.

Joan did not attend the January 31, 2012 discovery conference. The proceedings were not transcribed.

On March 2, 2012 the court held a hearing on a discovery motion by Ruth. Joan appeared at this hearing, which was transcribed by a court reporter. The court stated to Joan, "Ma'am, we had set up a hearing, and it was my intention then to help by going through these various discovery requests in an effort to make things move a little more smoothly in this case, and you did not appear, and we received notice that you had to go to the hospital." Joan replied, "That's correct, I did." The court then asked, "Did you actually go?" Joan answered, "Yes, of course." When the court asked Joan if she had "something you can show us to verify that," Joan answered, "not with me right now, but I'll be happy to provide it." After argument by the parties, the court ordered Joan to provide further responses to Ruth's outstanding discovery requests.

3

C.    *Joan Does Not Attend the Trial and the Court Enters Judgment for Ruth*

Joan did not appear for the trial on December 28, 2012, and the court proceeded with Ruth and her attorneys.  There is no reporter's transcript of the trial, and there is no settled statement.

On January 30, 2013 the court issued a statement of decision.  The court found that Ruth owned a 78-percent undivided tenancy-in-common interest and Joan owned a 22-percent undivided tenancy-in-common interest in the condominium; Joan had breached the parties' agreement by failing to pay the taxes, fees, and assessments; and Joan had "breached the agreement in a sum in excess of $150,000, which is more than the value of [her] tenancy-in-common interest in the real property."  The court entered a judgment ordering the sale of the condominium, with all proceeds awarded to Ruth, and removing Joan from the condominium.  Joan filed objections to the judgment, which the trial court overruled.

Joan subsequently filed motions for a new trial and to tax costs, which the court denied.  There was no court reporter for the hearings on Joan's motions for a new trial and to tax costs, and there are no settled statements for those hearings.  Joan filed a timely notice of appeal from the judgment.[3]

---

[3]    Joan filed a motion to augment the record on appeal with 14 exhibits.  We grant the motion as to Joan's verified answer (Exhibit 2) and a December 28, 2012 minute order (Exhibit 14), and otherwise deny the motion.  The other documents are either included in the clerk's transcript or were not before the trial court.  (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration'"]; Cal. Rules of Court, rule 8.155(a)(1)(A) [references to rules are to the California Rules of Court].)  Augmentation is not a means of supplementing the record with material that was not before the trial court.  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *Lewis v. YouTube, LLC* (2015) 244 Cal.App.4th 118, 123.)

**DISCUSSION**

Joan argues that the trial court committed reversible error by preventing her from filing a cross-complaint, denying her a continuance of the trial, and entering judgment in Ruth's favor notwithstanding Ruth's failure to join Isabella as a defendant.[4] None of Joan's arguments has merit.

A.      *Principles of Appellate Review*

Joan's briefs manifest her frustration with family members, personal health issues, and the results of unrelated lawsuits with family members, all of which she apparently experienced before and during this litigation. Joan voiced these grievances in her pleadings, discovery responses, and (the reported) colloquies with the trial court. Joan argues she is entitled to a reversal of the judgment because the trial court failed to consider her grievances.

While we sympathize with Joan and her struggle with her deteriorating family relationships and declining health, our role as a reviewing court is limited, which, as an attorney, Joan knows. "'It has long been the general rule and understanding that "an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration." [Citation.] This rule reflects an "essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law. . . ." [Citation.] The rule promotes the orderly settling of factual

---

[4]      Joan's notice of appeal states that she is also challenging the trial court's denial of her motions for a new trial and to tax costs. Joan, however, does not in her briefs address the trial court's denial of her motion to tax, and discusses the trial court's denial of her motion for a new trial only in her reply brief and without any legal argument or citation. As a result, she has forfeited both issues. (See *Estate of Sobol* (2014) 225 Cal.App.4th 771, 783 [failure to raise issue in briefs forfeits the issue]; *Altavion, Inc. v. Konica Minolta Systems Laboratory Inc.* (2014) 226 Cal.App.4th 26, 63 [argument made for the first time in reply brief is forfeited].)

questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal.'" (*California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 442.)

Moreover, "[a] judgment or order of a [trial] court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) "'Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.'" (*State Bar of California v. Statile* (2008) 168 Cal.App.4th 650, 673; see *Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1535 ["""[w]here [a trial court's] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision"""].) Where, as here, there is no reporter's transcript or settled statement of the court trial, our review is limited to determining whether an error appears on the face of the record. (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324-325; see *Aulisio v. Bancroft* (2014) 230 Cal.App.4th 1516, 1520 [such a "limited record severely compromises" the appellant's appeal "because we must presume any gaps in the record support the judgment"]; rule 8.830(b).)

In addition, the appellant has the burden of showing error and prejudice from that error. (*Jade Fashion & Co. Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 655; see *People v. Homick* (2012) 55 Cal.4th 816, 861.) We cannot consider evidence or other matters not in, and supported by citations to, the record. (See *Creed-21 v. City of San Diego* (2015) 234 Cal.App.4th 488, 522 ["we generally cannot consider evidence not contained in the record before the trial court"].) Nor can we consider issues that the parties did not raise in the trial court. (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 ["'issues not raised in the trial court cannot be raised for the first time on appeal'"]; *Morgan v. Imperial Irrigation District* (2014) 223 Cal.App.4th 892, 913 ["[a]s a general rule, an appellate court will not review an issue that was not raised by some proper method by a party in the trial court"].)

6

B.     *The Trial Court Did Not Preclude Joan from Filing a Cross-Complaint*

Joan argues that the trial court denied her right to file a cross-complaint when, in overruling her demurrer and denying her motion to strike, the trial court ordered Joan "to answer ONLY" within 30 days. Although the trial court may not have chosen the best wording to avoid a possible unintended consequence, the trial court did not deprive Joan of her right to file a cross-complaint. The court obviously meant, as an attorney like Joan would have known, that Joan had to file an answer to Ruth's complaint rather than another demurrer. The court did not mean that Ruth could not file a cross-complaint. Moreover, even if Joan believed the trial court's use of the words "answer ONLY" in its minute order precluded her from filing a cross-complaint within the 30-day period the court had given her to answer, Joan still had the right to file a motion for leave to file a cross-complaint after that. (See Code Civ. Proc., § 428.50.) Indeed, although Joan does not disclose the nature of the cross-complaint she may have been contemplating, if it were related to the subject matter of Ruth's complaint the trial court would have had to grant her leave to file a cross-complaint as long as she was acting in good faith. (See *Carroll v. Import Motors, Inc.* (1995) 33 Cal.App.4th 1429, 1436, fn. 12 ["'[a] motion to file a cross-complaint at any time during the course of the action must be granted unless bad faith of the moving party is demonstrated where forfeiture would otherwise result'"]; *Silver Organizations Ltd. v. Frank* (1990) 217 Cal.App.3d 94, 98-99 ["[a] policy of liberal construction of [Code of Civil Procedure] section 426.50 to avoid forfeiture of causes of action is imposed on the trial court"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2016) ¶ 6:518, p. 6-149 ["[a]t any time during the course of the lawsuit, the court retains power to permit defendant to file or amend a cross-complaint to avoid forfeiture of defendant's 'related' claim," and "[i]ndeed, the court 'shall grant' leave as long as defendant is acting in good faith"].)

C.     *The Trial Court Did Not Abuse Its Discretion by Not Continuing the Trial*

Joan argues that the trial court abused its discretion by not continuing the trial because of her health problems. According to Joan, she had a history of, and continued

7

during the litigation to suffer from, a bipolar disorder, cancer, and heart disease, all of which she described in her discovery responses and transcribed colloquies with the court.

"Trial courts generally have broad discretion in deciding whether to grant a request for a continuance." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527; see *In re Marriage of Falcone* (2008) 164 Cal.App.4th 814, 823 ["[r]eviewing courts must uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing"].) Rule 3.1332(b) provides that "[a] party seeking a continuance of the date set for trial . . . must make the request for a continuance by a noticed motion or an ex parte application . . . with supporting declarations. The party must make the motion or application as soon as reasonably practical once the necessity for the continuance is discovered."

There is no evidence that Joan made a motion or ex parte application for a continuance of the trial, or that she notified the court she was unavailable for trial. Although Joan asserts that the court was "notified that [she] was at the emergency room at Kaiser" on the day of trial, which certainly would have constituted good cause for a trial continuance, the record does not support her assertion. There is no evidence in the record that the trial court had any knowledge that Joan needed or had requested a continuance. Joan does not state that she, or someone acting on her behalf, contacted the court and asked for a trial continuance.[5] Instead, Joan seems to suggest that, because she had informed the court of her health problems earlier in the litigation, the court should have figured out her absence from the trial was because of health issues, and then should have continued the trial sua sponte when Joan failed to appear. A trial court, however, has such no such duty to continue a trial in the absence of a request for a continuance.

---

[5] In her declaration in support of her motion for a new trial, Joan stated that she was unable to come to court on the day of trial because was experiencing "chest and arm pain, a very rapid heartbeat . . . and high blood pressure." She does not state, however, that she ever notified the court, or was unable to advise the court, of her condition on the day of trial, nor did she submit any medical documentation confirming her medical condition on that day.

8

(See *People v. Alcala* (1992) 4 Cal.4th 742, 782 ["trial court was under no obligation to volunteer, sua sponte, that the defense could have an unrequested continuance"]; *Davis v. Nadrich* (2009) 174 Cal.App.4th 1, 8 [trial court did not have a duty to continue a hearing "without a specific request to do so," where the plaintiff "failed to provide the trial court with sufficient information to warrant a 'mandatory continuance'"].)

Joan also argues that the trial court improperly refused to continue the trial as a reasonable accommodation for her mental and physical disabilities. Rule 1.100 enables persons with disabilities under the Unruh Civil Rights Act, Civil Code section 51 et seq., the Americans with Disabilities Act of 1990, and other state and federal statutes to apply for accommodations to ensure full and equal access to the courts. (Rules 1.100(a), (b).) Rule 1.100(c) provides that a litigant may make a request for an accommodation "ex parte on a form approved by the Judicial Council, in another written format, or orally," and the request "must include a description of the accommodation sought, along with a statement of the impairment that necessitates the accommodation." Under appropriate circumstances, a trial continuance may be an appropriate accommodation. (*Vesco v. Superior Court* (2013) 221 Cal.App.4th 275, 279; *In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261.)

There is no evidence that Joan ever made a request for an accommodation, whether in the form of a trial continuance or otherwise. There is no evidence that Joan made a written or oral submission to the court that described the accommodation she was seeking (i.e., a trial continuance) or identified the nature of the impairment that required the accommodation. Unlike *In re Marriage of James & Christine C.*, *supra*, 158 Cal.App.4th 1261, where the wife in a marital dissolution action followed the procedures in rule 1.100 for requesting an accommodation (*Marriage of James & Christine C.*, at p. 1273), *Vesco v. Superior Court*, *supra*, 221 Cal.App.4th 275, where the defendant filed an ex parte application pursuant to rule 1.00(a)(1) (*Vesco*, at pp. 277-278), and *Biscaro v. Stern* (2010) 181 Cal.App.4th 702, where the defendant during a courtroom hearing requested an accommodation for his disabilities (*id.* at p. 705), Joan never made a request for accommodation, nor did she provide the court with information that she needed the

9

accommodation of a trial continuance.  The trial court did not violate rule 1.100 by not continuing the trial as a reasonable accommodation for a disability.

D.    *Joan Cannot Argue for the First Time on Appeal That Ruth Had Failed To Join an Indispensable Party*

In a partition action, the plaintiff must join as defendants "all persons having or claiming interests of record or actually known to the plaintiff or reasonably apparent from an inspection of the property, in the estate as to which partition is sought."  (Code Civ. Proc., § 872.510; see 11 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 11:15 ["[t]he complaint must name all parties who have any recorded interest in the property . . . or whom the plaintiff knows claim an interest in the property"].)  Ruth's partition cause of action did not name Joan's daughter Isabella.  Several amendments to the trust contained in the record state that the condominium may be distributed to Isabella if Joan is not living.  From these trust provisions, Joan argues that Isabella, as a contingent beneficiary, was a necessary party to Ruth's partition action, and, because Ruth did not name Isabella as a defendant, the trial court should not have proceeded with the trial in the absence of a necessary party.

A party arguing that the plaintiff failed to join a necessary party, however, must raise the issue in a demurrer or in an affirmative defense in the answer.  Otherwise, the issue is waived.  (§§ 430.10, subd. (d), 430.80, subd. (a); *Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1105; *Security-First Nat. Bank of Los Angeles v. Cooper* (1944) 62 Cal.App.2d 653, 664.)  Because Joan did not argue in her demurrer or allege in her answer that Ruth had failed to name Isabella as an indispensible party, she has waived the issue and cannot raise it on appeal.  (See *Cline v. Haines* (1961) 192 Cal.App.2d 560, 563-563.)  Indeed, in the partition case cited by Joan in support of her argument, *Neusted v. Skernswell* (1945) 69 Cal.App.2d 361, the defendant filed a demurrer on the ground that the complaint did not allege the proportional interests of all of the necessary parties.  (See *id.* at p. 364.)

10

## DISPOSITION

The judgment is affirmed.  Ruth's request for sanctions is denied.  Each party is to bear her costs on appeal.


SEGAL, J.

We concur:


PERLUSS, P. J.


ZELON, J.

11