Filed 6/13/25  Quach v. Agents Realty and Finance CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

|  |  |
|---|---|
| CUONG HUY QUACH,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>AGENTS REALTY AND FINANCE, et al.,<br><br>Defendants and Respondents. | H052740<br>(Santa Clara County<br>Super. Ct. No. 21CV392006) |

**THE COURT**[*]

In November 2024, Cuong Huy Quach applied for a temporary restraining order against a foreclosure sale.  Two days later, the trial court denied the application, and Quach appealed from the denial.  Quach also petitioned for a writ of supersedeas staying the foreclosure sale, but the petition was denied.  (*Quach v. Agents Realty and Finance* (Dec. 12, 2024, H052752) [nonpub. opn.].)  As a consequence, the foreclosure sale proceeded, and in January 2025 the property at issue was sold.  At respondents' request, we have taken judicial notice of the foreclosure sale.  Now, in light of that sale, we dismiss this appeal as moot.

---

[*] Before Danner, Acting P.J., Wilson, J., and Bromberg, J.

# I. Background

Quach owned a residence on Whitesand Drive in San Jose. In 2019, Quach refinanced the Whitesand property with a new loan and later took out a bridge loan to pay the interest on the first loan. However, allegedly due to strokes in 2018 and 2021, he defaulted on both loans.

## A. The 2019 Refinancing Loan

By 2019, Quach allegedly had fallen behind on payments for a mortgage of approximately $900,000 on the Whitesand property. Accordingly, in September 2019, Quach obtained a $1,170,000 loan secured by a deed of trust on the property, which he apparently used to refinance and pay off his first loan. The refinancing loan was subsequently assigned to Yan Zhang and Ling Song. Soon after obtaining the loan, Quach allegedly experienced financial hardship due to his 2018 stroke, subsequent medical procedures, and resulting inability to work, and he was unable to make the payments due.

## B. The 2020 Bridge Loan

In September 2020, Quach obtained a $70,000 bridge loan from Kok Jin Yeo, which was secured by a second deed of trust on the Whitesand property. Interest on the bridge loan was to be paid monthly beginning in November 2020, with a balloon payment covering the principal and remaining interest due in May 2021. However, after his 2021 stroke, Quach allegedly became delinquent on the 2020 bridge loan as well as the 2019 refinancing loan.

## C. Legal Proceedings

### 1. The Initial Complaint

In December 2021, Quach sued Zhang, Song, and Yeo, the holders of the refinancing loan and bridge loan, as well as his broker, real estate agent, a loan processor, and the servicer of the loans. Quach alleged breaches of fiduciary duty, civil conspiracy, unfair business practices, negligent misrepresentation, and violation of the Truth in

2

Lending Act. As relief, Quach sought damages as well as an injunction against sale of the Whitesand property.

## 2. Quach's Bankruptcy

In September 2022, after a notice of default on the bridge loan and a notice of foreclosure sale were recorded, Quach filed for bankruptcy, staying the foreclosure sale. In July 2023, Yeo filed a proof of claim and moved for relief from the stay based on his secured interest in the Whitesand property.

On September 23, 2024, the bankruptcy court granted Yeo's motion. However, it prohibited foreclosure on the Whitesand property before November 15, 2024, and it required the creditors to inform Quach's counsel in writing of the amount necessary to pay off his debts on the property to "allow Debtor the opportunity to sell the Property or refinance it."

## 3. The Temporary Restraining Order

On November 5, 2024, 10 days before the deadline set by the bankruptcy court in September, Quach filed an ex parte application for a temporary restraining order and an order to show cause regarding a preliminary injunction. In the application, Quach stated that he had "listed his house for sale in September 2024" and was seeking "a stay of any foreclosure on the property until it can be sold." In addition, Quach asked the court "to set a temporary payoff demand" of $1,170,00 and $70,000 for the refinancing loan and the bridge loan. Respondents opposed, asserting that Quach had failed to demonstrate a need for emergency relief, a likelihood of success on the merits, or irreparable harm. On November 7, 2024, the trial court denied Quach's application for a temporary restraining order.

In denying the temporary restraining order, the trial court observed that this case "appears to be about money, not the ability of plaintiff to keep the home." The court also observed that, while the parties disputed the amount due on the loans, Quach "did nothing since mid-September to resolve the differences or seek immediate relief." Finally, the

3

trial court described the payoff demand that Quach requested as "extraordinary" relief and noted that nothing in its order prevented a voluntary set-aside of sale proceeds pending resolution of this case.

### 4. *The Appeal and the Supersedeas Petition*

On November 21, 2024, Quach filed a timely notice of appeal from the denial of his request for a temporary restraining order. Quach also filed a petition for a writ of supersedeas, which was denied on December 12, 2024.

## II. DISCUSSION

In March 2025, after briefing on appeal was complete, respondents filed a motion asking this court to take judicial notice that the foreclosure sale of the Whitesand Drive property had occurred and asserting that the sale "render[ed] moot the question of whether a stay of the foreclosure was appropriate." Attached to the motion was a deed of sale recorded on January 23, 2025 stating that the Whitesand property was sold to a third party at a foreclosure sale on January 17, 2025. Because a recorded deed of sale is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source of reasonably indisputable accuracy (Evid. Code, § 452, subd. (h)), and Quach did not oppose taking judicial notice, we granted the request for judicial notice and ordered Quach to show cause why this appeal should not be dismissed as moot. Having received Quach's response, we now conclude that the appeal is moot.

"An appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief. [Citation]." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479; see also 9 Witkin, Cal. Procedure (6th ed. 2021) Appeal, § 777(1) [appeals become moot when " 'an event occurs which renders it impossible for [the appellate] court, if it should decide in favor of the plaintiff, to grant him any effectual relief"].) Accordingly, "a live appeal may be rendered moot by events occurring after the notice of appeal was filed," such as "when injunctive relief is sought but, pending appeal,

4

the act sought to be enjoined has been performed." (*Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557; see also *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10-11; *Cerletti v. Newsom* (2021) 71 Cal.App.5th 760, 766 [action to restrain distribution of payments completed prior to appeal]; *Giles v. Horn* (2002) 100 Cal.App.4th 206, 227 [expiration of contracts sought to be enjoined pending appeal]; *County of Los Angeles v. Butcher* (1957) 155 Cal.App.2d 744, 746 ["Whether an injunction restraining the sale of real property should be granted becomes a moot question on appeal where in the meantime the property has been sold."].)

For example, in *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182 (*Ragland*), the plaintiff's request for a preliminary injunction against a foreclosure sale was denied. (*Id.* at p. 191.) When the plaintiff belatedly sought to appeal that ruling, the Court of Appeal held that, even if timely filed, the appeal would have failed because the foreclosure sale occurred the day after the preliminary injunction was denied (*id*. at p. 192), and "the sale of her home at foreclosure would have rendered the appeal moot." (*Id.* at p. 208.) "An appeal from an order denying a temporary restraining order or preliminary injunction will not be entertained after the act sought to be enjoined has been performed." (*Ibid*.)

This case is indistinguishable. Like the plaintiff in *Ragland*, Quach sought to temporarily enjoin a foreclosure sale, and the trial court denied relief. Also as in *Ragland,* the foreclosure sale that Quach sought to enjoin has taken place. Consequently, like the plaintiff in *Ragland*, Quach cannot obtain any effective relief from the denial of his request for a temporary restraining order, and therefore his appeal from the denial of that request is moot. It is true that the foreclosure sale in *Ragland* took place before the appeal, while the foreclosure sale here took place after Quach noticed his appeal. However, as Quach failed to obtain a stay or a writ of supersedeas preventing the foreclosure sale, this distinction is immaterial. Quach's appeal is moot because this court

5

cannot provide any effective relief from the denial of a temporary restraining order against an action that has occurred.

Although Quach denies that the appeal should be dismissed as moot, he does not identify any effective relief that this court may provide in light of the foreclosure sale, which he does not dispute has occurred. He asserts that this case should be left "in its status quo at the time the preliminary injunction and temporary restraining order was filed." However, he does not explain how, now that the foreclosure sale has taken place, it is possible for this court to return this case to its prior status quo. Quach also asserts that the trial court eventually will find that the foreclosure sale should be rescinded, but he does not attempt to prove that rescission is warranted, much less demonstrate that this court should order rescission at this early stage of the case.

Quach's other arguments are even more inapposite. For example, he criticizes the trial court for failing to presume irreparable injury from the sale of a family residence (albeit without mentioning that he had listed the home for sale) and for failing to discuss rescission. However, Quach does not explain how either consideration bears on the question of mootness. Quach also asserts that this case appeal involves a mandatory injunction and that mandatory injunctions are automatically stayed on appeal. However, the temporary restraining order that Quach sought was primarily prohibitory in nature—it sought to enjoin the foreclosure sale—and was denied. As a consequence, the automatic stay for mandatory injunctions that are granted is inapplicable. (*Daly v. San Bernardino County Bd. of Supervisors* (2021) 11 Cal.5th 1030, 1035, 1040-1041 [unlike mandatory injunctions, prohibitory injunctions not automatically stayed by appeal].) Quach's discussion of the relief sought, the relation-back of the amended complaints, and the specific facts pleaded are similarly inapposite.

We therefore conclude that there is no effective relief that can be afforded from the denial of Quach's application for a temporary restraining order, and his appeal from the denial of that application is moot.

6

## III. DISPOSITION

The appeal is dismissed.